IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PETER WILLIAM MAYES, | ) | CASE NO. 1:07CV0315 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE O'MALLEY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| STEWART HUDSON, Warden, | ) | |
| | ) | **ORDER** |
| | **)** | |
| Respondent. | ) | Docket #26 |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is Peter William Mayes' ("Mayes") petition for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254 on February 6, 2007.  Mayes is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio vs. Mayes*, Case No. CR-02-422426 (Cuyahoga County

2002).  For the reasons set forth below, Mayes' petition should be dismissed.

I.  Background

The January 2002 term of the Cuyahoga County grand jury indicted Mayes on

two  counts of attempted rape, one count of rape, one count of gross sexual imposition,

and two counts of kidnaping with sexual motivation specifications.  The state appellate

court reviewing Mayes' direct appeal found the following facts to be relevant to the

claims raised in his appeal:

> {¶ 5} Appellant's convictions result from his original relationship with the victim's mother "MJ," a registered nurse.  Appellant, who was forty-four years old at the time, had become acquainted with MJ in late 1999, just after her separation from her husband, AW, the father of her two children, a boy aged fifteen and a girl, R, aged thirteen.

> {¶ 6} Three months after AW left the household, appellant moved in and began an intimate relationship with MJ.  For nearly a year thereafter, appellant was one of MJ's children's male authority figures.  Appellant shared an interest in small animals with R; both of them kept as pets a number of hamsters and gerbils.

> {¶ 7} By July 2001, MJ had broken off her increasingly stormy relationship with appellant, become involved with another man, and moved with her children to his home in Wadsworth, Ohio.  She and appellant, however, shared mutual friends.  Consequently, after her move, MJ made some effort to be amicable toward appellant.

> {¶ 8} Appellant appeared to reciprocate her effort. In late 2001, knowing MJ was unemployed, he offered her a job painting with him for a few days.  He also invited MJ to see his new apartment in Rocky River, Ohio.

> {¶ 9} During all this time, MJ also cooperated with AW in giving him visitation with the children.  MJ eventually obtained a nursing position in Wadsworth.  Subsequently, she and AW arranged for him to take the children to his home in North Olmsted, Ohio on alternate weekends.  These generally were the weekends MJ was scheduled for work.

> {¶ 10} Through appellant's occasional contact with MJ, he became aware of this arrangement.  He telephoned MJ in February 2002 and expressed a wish to continue his relationship with her children.  Appellant suggested he could do so partially by acting as a "facilitator" of MJ's visitation arrangement for the children with AW.  He had time, transportation, and an apartment located near AW's place of employment.

> **\*2** {¶ 11} MJ cautioned appellant that the schedule was flexible.  When she mentioned that sometimes her son decided at the last minute to remain home, appellant indicated he would not take the decision personally, since he had become especially fond of R due to their shared interest.  He persuaded MJ to try the arrangement.

> {¶ 12} Appellant's first weekend as "facilitator" seemed to proceed normally, although, as MJ had predicted, her son decided to stay home rather than to visit AW's house.  Appellant went to Wadsworth, picked up only R, and returned to

the Cleveland area.  Since AW was working that night, R spent it at appellant's apartment. The following morning, appellant transferred R to AW for the remainder of the weekend.

{¶ 13} The second time appellant acted as "facilitator" occurred on the weekend of March 22, 2002.  Since MJ's son had obtained two tickets to a concert for that Friday evening, it was decided that AW would pick the boy up at appellant's apartment, the two of them would go to the event, and the following morning appellant would drive R to AW's house.  The arrangement proceeded as planned. AW noticed that R seemed somewhat withdrawn that day and the next, but she did not mention any distress.  He returned the children to MJ on Sunday evening.

{¶ 14} R went to school the next morning as usual.  Before school had ended for the day, MJ had been approached by Jeremy Staats, a young man whom R regarded as a "surrogate" older brother. Staats told MJ that R twice had confided in him, and that in view of the information she gave, he could no longer keep the confidence.  He indicated that, upon her return home the previous evening, R disclosed appellant had sexually assaulted her for the second time.

{¶ 15} After questioning Staats, MJ privately confronted R. R at that time told MJ that, both times she had visited appellant's apartment, he had placed his fingers inside her vagina and had unsuccessfully tried to put his penis into her vagina. MJ immediately took R to the hospital.

{¶ 16} Once there, R described what had occurred first to Donna Abbott, a nurse practitioner.  After her physical examination, R described the incidents again to Wendy Facchini, a social worker.  R's descriptions to each person were consistent, and she indicated appellant had taken similar actions during each incident.

{¶ 17} As R described the incidents, appellant waited until she had dropped off to sleep before waking her by removing the garments she wore on her lower extremities.  While he pushed aside any of R's attempts to disengage herself, the first time appellant placed her hand on his penis and "made her play with it," then unsuccessfully tried to place his penis into her.  The second time, he placed some of his fingers into her vagina and moved them around, as if to stretch its area; he then applied some type of lubricating ointment or oil to her before attempting, but again failing, to penetrate her vagina with his penis.  Both times, he replaced her clothing, and "cried" while he "begged" her not to tell anyone what he had done and "promised" he would not do it again.

{¶ 18} Facchini notified the Rocky River police department.  That same night, two officers drove to Wadsworth to obtain items from the backpack R had used as an overnight bag.  MJ noticed R's diary was missing even as she handed over the

3

underclothing R had brought home.  R had told both MJ and Staats that on March 22, she had recorded the first incident in her diary upon her arrival at appellant's apartment, but that she could not find the diary before she left appellant's apartment on March 23.

{¶ 19} Appellant subsequently was indicted on six counts.  The first three related to the March incident, charging him with: (1) attempted rape, R.C. 2923.02/2907.02(A)(2); (2) rape, R.C. 2907.02(A)(2); and, (3) kidnapping, R.C. 2905.01.  The remaining three related to the February incident, charging appellant in count 4 with attempted rape; count 5 with gross sexual imposition, R.C. 2907.05; and count 6 with kidnapping.  Appellant's case eventually proceeded to a jury trial.

{¶ 20} After the state presented its evidence, the trial court granted appellant's motion for dismissal as to count 6.  Ultimately, the jury acquitted appellant of the remaining kidnapping count, but found appellant guilty of two counts of attempted forcible rape, one count of forcible rape, and one count of gross sexual imposition.

{¶ 21} The trial court determined appellant to be a sexual predator before sentencing him to consecutive terms of incarceration that totaled twenty-four years.

*State v. Mayes*, 2004 WL 858099, at *1-*3 (Ohio App. April 22, 2004) (footnotes omitted).

Mayes timely appealed his conviction to the state appellate court.  In his brief in support of his appeal, Mayes asserted the following five assignments of error:

Assignment of Error I:

> Evidence presented was insufficient to support the attempted rape and gross sexual imposition convictions.

Assignment of Error II:

> The trial court erred when it denied appellant's motion for a mistrial after testimony relating to appellant's criminal history.

Assignment of Error III:

> The trial court erred in ordering consecutive sentences which were not supported by the record.

4

Assignment of Error IV:

> The trial court erred in imposing sentences which are inconsistent with similar sentences for similar offenders as required in R.C. 2929.11(B).

Assignment of Error V:

> The evidence was insufficient, as a matter of law, to prove by "clear and convincing evidence" that appellant "is likely to engage in the future in one or more sexually oriented offenses."

In a later supplemental brief allowed by the court, Mayes asserted a sixth assignment of error, ineffective assistance of trial counsel.  On May 12, 2004, the state appellate court affirmed the judgment of the trial court.  Mayes filed a motion for reconsideration on April 30, 2004, which the appellate court denied.

Mayes filed a timely notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Answer, Exh. 17, Mayes asserted the same six propositions of law that he had presented to the appellate court.  On September 29, 2004, the Ohio Supreme court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  On October 12, 2004, Mayes moved for reconsideration, and the Ohio Supreme Court denied his motion.

Meanwhile, on September 12, 2003, Mayes petitioned the trial court to vacate and set aside sentence pursuant to Ohio Rev. Code § 2953.21.  Mayes cited ineffective assistance of trial counsel in failing to call witnesses, challenge the sentence, or call expert medical testimony as grounds to vacate.  The court later permitted Mayes to add a claim of ineffective assistance of trial counsel for failing to challenge the validity of a search warrant.  On March 21, 2005, the trial court denied Mayes' petition, finding that his claims were barred by *res judicata* and were without merit.

5

Mayes timely appealed the denial of his petition for post-conviction relief. In his brief in support of his appeal, Mayes asserted two assignments of error:

Assignment of Error I:

> The trial court erred when it denied the appellant a hearing on his petition for post-conviction relief on the basis that the appellant had not submitted sufficient evidentiary material in support of his claims.

Assignment of Error II:

> The trial court erred when it held that appellant's claims in his post-conviction relief was [sic] barred by the doctrine of res judicata.

On January 23, 2006, the state appellate court affirmed the judgment of the trial court.

Mayes timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decision. In his memorandum in support of jurisdiction, Mayes asserted one proposition of law: "The trial court and the court of appeals erred in denying appellant an evidentiary hearing regarding newly discovered evidence that supports appellant's claims in appellant's post-conviction relief petition." On April 26, 2006, the Ohio Supreme court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Mayes moved for reconsideration, and the Ohio Supreme Court denied his motion on June 21, 2006.

On June 17, 2004, while Mayes' petition for post-conviction relief and its appeal were pending, Mayes moved in the state appellate court for appointment of counsel to allow Mayes to reopen his appeal pursuant to Ohio App. R. 26(B). The state appellate court denied this motion.

On March 14, 2006, Mayes filed in the trial court a petition pursuant to Ohio Rev. Code § 2953.21 for modification of sentence, arguing that the Ohio Supreme Court's

6

decision in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), required modification of Mayes' sentence.  After the state opposed the petition, Mayes moved for summary judgment on the issue.  On June 21, 2006, the trial court denied Mayes' motion for summary judgment by docket entry, noting only that the decision could not be used to collaterally attack a prior judgment through post-conviction proceedings.  Mayes made several unsuccessful attempts to require the court to issue findings of fact and conclusions of law.

On September 14, 2006, Mayes appealed the trial court's denial of his motion for summary judgment.  Mayes raised two assignments of error in his appeal:

Assignment of Error I:

Trial court erred in not including the proper findings of fact and conclusions of law pursuant to R.C. § 2953.21(E) & (G) with respect to the journal entry of June 21, 2006.

Assignment of Error II:

Trial court erred in their [sic] denial to adjudicate appellant's unconstitutional consecutive sentences pursuant to State v. Foster (2006), 109 Ohio St. 3d 1 - ¶ 97 & ¶ 106.

The state appellate court construed Mayes' petition to modify sentence and his motion for summary judgment as a petition for post-conviction relief.  On May 29, 2007, the appellate court found that the trial court had no duty to issue findings of fact and conclusions of law upon a successive petition for post-conviction relief and affirmed the trial court's judgment that Mayes could not use *Foster* to collaterally attack his sentence through post-conviction proceedings.  The court also found that Mayes' petition had been untimely and failed to meet the conditions required to overcome the untimeliness.  Thus, the court did not consider the merits of the petition.  The appellate court overruled

7

Mayes' assignments of error and affirmed the judgment of the trial court.  Mayes did not appeal this decision to the Ohio Supreme Court.

Mayes filed in this court a petition for a writ of habeas corpus on February 6, 2007.  Mayes asserts four grounds for relief in his petition:

> A.  Ground one:  Compelling defendant to be a witness against himself & double jeopardy--5th Amendment; ineffective assistance of counsel--6th Amendment; due process & equal protection--14th Amendment.
>
> Trail counsel refused to allow subpoenaed defense witnesses & forensic scientists to testify on defendant's behalf.  Two of those subpoenaed defense witnesses have first-hand knowledge, directly from the alleged victim, that defendant did not commit any criminal acts against her.  In addition, trial counsel failed to investigate state's evidence, or lack thereof, while also failing to get an independent analysis of same.
>
> B.  Ground two:  Prosecutorial misconduct which violated defendant's 5th & 14th Amendments [sic].
>
> Improper & completely false gratuitous information to the jury via several state's witnesses alluding to defendant's unfounded & unproven prior prison experience for a non-existent crime of "robbery."  Neither trial counsel, the prosecution, or the trial judge ever contemplated [sic] to see if defendant was ever arrested and convicted for this alluded to, but completely false, crime & incarceration of [sic] "robbery."  This completely alienated the jury [from] defendant's case.  Defendant was denied a fair trial.
>
> C.  Ground three:  Trial court unconstitutionally ordered consecutive sentences for the defendant--violation of the Due Process Clause of the 14th Amendment & Double Jeopardy Clause of the 5th Amendment & the Cruel & Unusual Punishment Clause of the 8th Amendment.
>
> Trail court did not make the required findings relative to each incident to support the necessity for consecutive sentences for the alleged offenses  committed pursuant to the sentencing statutes.  Recently, those same sentencing statutes were found to be unconstitutional in a decision of the Ohio Supreme Court.  Defendant is eligible for sentence modification in lieu of this same decision [sic], but the court of common pleas and appellate courts disagree.
>
> D.  Ground four:  Trial court sentencing defendant with sentences inconsistent with sentences for similar offenders--violation of the Equal Protection Clause of the 14th Amendment & Double Jeopardy Clause of the 5th

8

Amendment.

> Defendant was not sentenced consistently with numerous similar sentences for similar, or greater, offenses.  A brief survey of similar cases [in] the Cuyahoga County Court of Common Pleas system indicate[s] that sentences imposed by the trial court in defendant's case are disproportionately greater [sic] than those sentences [for] similar crimes committed by similar offenders.

(Capitalization, punctuation, and spelling altered from the original.)  This court held Mayes' petition in abeyance from April 18, 2007 through May 4, 2009 to allow petitioner to exhaust state remedies.  Respondent filed an Answer/Return of Writ on July 7, 2009.  Doc. No. 24.  Petitioner filed a Traverse on September 16, 2009.  Doc. No. 31.  Respondent has filed a reply to issues first raised in the Traverse.  Doc. No. 32.  Thus, the petition is ready for decision.

## II.  Jurisdiction and Procedural Issues

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Mayes.  Mayes filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic jurisdiction.  This court has jurisdiction over Mayes' petition.

9

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Mayes' claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity

10

between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because the exhaustion requirement is a matter of comity, not jurisdiction, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

As Mayes does not have any further state remedies available, he has exhausted state remedies.

D.    *Procedural default*

Respondent argues that Mayes has procedurally defaulted his second, third, and fourth grounds for relief.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Procedural default occurs when a petitioner fails to present fairly to the highest

11

state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526

U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Fair presentment of a claim

in a federal constitutional context requires a petitioner to apprise the state courts that a

claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v.

Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "book and verse

on the federal constitution,"  *Picard v. Connor*, 404 U.S. 270, 278 (1971),  to apprise

state courts that his claim is based on federal law.  A petitioner fairly presents a federal

claim to state courts by relying on relevant federal cases employing the constitutional

analysis upon which petitioner relies, by relying on state cases employing a federal

constitutional analysis in fact situations similar to his own, or by asserting the claim in

terms so particular as raise the specific right protected by the Constitution.  *Franklin v.

Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186,

193-94 (2d Cir. 1982)).  A petitioner does not fairly present a federal claim to a state

court merely by presenting the facts underlying his claim for relief, *Picard,* 404 U.S. at

277, nor by making a general reference to a broad constitutional guarantee, such as

due process, *Gray v. J.D. Nederland*, 518 U.S. 152, 163 (1996).  The petitioner must

present argument or citations to cases which identify the substance of the particular

analysis upon which petitioner relies in asserting his federal constitutional claim.  *Gray*,

518 U.S. at 162-63.  Moreover, "ordinarily a state prisoner does not 'fairly present' a

claim to a state court if that court must read beyond a petition or a brief (or a similar

document) that does not alert it to the presence of a federal claim in order to find

material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*,

541 U.S. 27, 32 (2004).  Finally, fair presentment requires that any claim raised in

12

federal court has been presented to the state courts under the same legal theories and

based on the same errors described in the federal claim.   *Pillette v. Foltz,* 824 F.2d

494, 497 (6th Cir. 1987).  The court will examine each of Respondent's claims of

procedural default.

> 1. *Procedural default and Mayes' second ground for relief*

Mayes' second ground for relief is as follows:

> B.  Ground two:  Prosecutorial misconduct which violated defendant's 5th
> & 14th Amendments [sic].
>
> Improper & completely false gratuitous information to the jury via several state's
> witnesses alluding to defendant's unfounded & unproven prior prison experience
> for a non-existent crime of "robbery."  Neither trial counsel, the prosecution, or
> the trial judge ever contemplated [sic] to see if defendant was ever arrested and
> convicted for this alluded to, but completely false, crime & incarceration of [sic]
> "robbery."  This completely alienated the jury [from] defendant's case.  Defendant
> was denied a fair trial.

Mayes never raised a claim of prosecutorial misconduct as a separate claim in the state

courts.  In his direct appeal, he alleged that the trial court committed error when it

denied Mayes' motion for a mistrial after two witnesses gratuitously revealed information

regarding Mayes' prior prison stay.  He did not allege, however, that this constituted

prosecutorial misconduct.  In his memorandum in support of jurisdiction in the Ohio

Supreme Court on direct appeal, Mayes alleged that "[t]he trial court and court of

appeals erred when it [sic] denied appellant's motion for a mistrial after testimony

relating to appellant's false criminal history."  Mayes contended that a single witness

had revealed information about an alleged robbery conviction and that the state

encouraged this testimony to evade the limitations of the evidentiary rules.  Mayes

alleged that the court erred in failing to grant his motion for a mistrial and alleged

13

violations of his rights to due process, equal protection, and a fair trial, but he did not allege prosecutorial misconduct.

A petitioner defaults his claim for relief if the petitioner fails to present the claim to a state appellate court when given an opportunity to do so on direct appeal.  *Teague v. Lane,* 489 U.S. 288, 297-98 (1989); *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).  Thus, Mayes' failure to raise his second ground for relief, prosecutorial misconduct, in the state appellate court on direct appeal procedurally defaulted that claim.[1]

Mayes does not demonstrate cause and prejudice for his failure to raise his second ground for relief in the state courts.  Mayes' claim in his traverse that he could not raise prosecutorial misconduct because he was unable to obtain a copy of the trial transcripts is unavailing.  Prosecutorial misconduct is simply a legal theory that relies upon the same factual basis as Mayes' claim for a mistrial.  Mayes has failed to demonstrate that a trial transcript was necessary to proceed with his prosecutorial misconduct claims.  Moreover, Mayes has defaulted his claim, not because he did not

---

[1] Even if Mayes' memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim of prosecutorial misconduct (and it cannot be so read), Mayes' failure to raise that claim in the appellate court resulted in its default.  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, as the Ohio Supreme Court was in declining jurisdiction over Mayes appeal, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  Consequently, this court must assume that the Ohio Supreme Court declined jurisdiction over any claim of prosecutorial misconduct due to Mayes' failure to raise that claim in the state appellate court.

have access to the underlying facts, but because he failed to frame those facts in the state court using same legal theory that he uses in this court, prosecutorial misconduct. Consequently, Mayes fails to demonstrate cause for his procedural default.

Mayes defaulted his second ground for relief and fails to demonstrate cause and prejudice for this default.  For these reasons, Mayes' second  ground for relief should be dismissed as procedurally defaulted.

   *2.      Default and Mayes' third and fourth grounds for relief*

In his third and fourth grounds for relief, Mayes alleges the following:

   C.  Ground three:  Trial court unconstitutionally ordered consecutive sentences for the defendant--violation of the Due Process Clause of the 14th Amendment & Double Jeopardy Clause of the 5th Amendment & the Cruel & Unusual Punishment Clause of the 8th Amendment.

   Trail court did not make the required findings relative to each incident to support the necessity for consecutive sentences for the alleged offenses  committed pursuant to the sentencing statutes.  Recently, those same sentencing statutes were found to be unconstitutional in a decision of the Ohio Supreme Court. Defendant is eligible for sentence modification in lieu of this same decision [sic], but the court of common pleas and appellate courts disagree.

   D.  Ground four:  Trial court sentencing defendant with sentences inconsistent with sentences for similar offenders--violation of the Equal Protection Clause of the 14th Amendment & Double Jeopardy Clause of the 5th Amendment.

   Defendant was not sentenced consistently with numerous similar sentences for similar, or greater, offenses.  A brief survey of similar cases [in] the Cuyahoga County Court of Common Pleas system indicate[s] that sentences imposed by the trial court in defendant's case are disproportionately greater [sic] than those sentences [for] similar crimes committed by similar offenders.

Mayes raised these grounds for relief in his direct appeal, asserting them both in the state appellate court and in the Ohio Supreme Court.  However, Mayes raised these claims strictly as state claims.  He cited state law only and did not assert a federal

15

constitutional violation.  Having failed to present his third and fourth grounds for relief to the state courts as federal constitutional claims, Mayes has procedurally defaulted these claims.[2]

Mayes does not demonstrate cause and prejudice for his procedural defaults. For these reasons, Mayes' third and fourth grounds for relief should be dismissed as procedurally defaulted.

### III.  Merit Review

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not

---

[2]  Moreover, even if Mayes had preserved his third ground for relief, it would have been found to be without merit.  Ohio courts and federal courts considering the questions have consistently ruled that *Foster* does not violate the *Ex Post Facto* Clause or the Due Process Clause of the federal constitution.  *See cases cited at Dean v. Timmerman-Cooper*, 2009 WL 3261634, at *7 (N.D. Ohio Oct. 8, 2009).

its dicta, and the law must be clearly established at the time of the petitioner's

conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our

clearly established precedent if the state court applies a rule that contradicts the

governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable

application of federal law only if the deciding court correctly identifies the legal principle

at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*,

237 F.3d 722, 729-31 (6th Cir. 2001).

Mayes' first ground for relief contends as follows:

A.  Ground one:  Compelling defendant to be a witness against himself &
double jeopardy--5th Amendment; ineffective assistance of counsel--6th
Amendment; due process & equal protection--14th Amendment.

Trial counsel refused to allow subpoenaed defense witnesses & forensic
scientists to testify on defendant's behalf.  Two of those subpoenaed defense
witnesses have first-hand knowledge, directly from the alleged victim, that

17

defendant did not commit any criminal acts against her.  In addition, trial counsel failed to investigate state's evidence, or lack thereof, while also failing to get an independent analysis of same.[3]

---

[3]  It appears to this court that Mayes' petition is barred in its entirety by the statute of limitations.  Respondent erroneously asserts that Mayes' statutory period for filing his petition expired on June 22, 2007.  According to this court's calculation, explained below, the period for filing the petition expired on April 20, 2006.

On October 12, 2004, the Ohio Supreme Court denied Mayes' motion for reconsideration of its decision to decline jurisdiction over his direct appeal.  The statutory period would have begun to run on October 13, 2004, but Mayes had pending in the trial court a petition to vacate and set aside sentence pursuant to Ohio Rev. Code § 2953.21 on the ground of ineffective assistance of trial counsel.  As this was a federal claim which Mayes eventually raised in his federal habeas petition, the state petition to vacate tolled the running of the statutory period.  On March 21, 2005, the trial court denied Mayes' petition.  Mayes then had 30 days from the entry of judgment in the trial court to file an appeal of this decision in the state appellate court.  *See* Ohio App. R. 4(A)).

However, when Mayes did file an appeal of the trial court's decision, he did not raise the issue of ineffective assistance of counsel as an independent claim.  Rather, he raised the following two assignments of error:

> The trial court erred when it denied the appellant a hearing on his petition for post-conviction relief on the basis that the appellant had not submitted sufficient evidentiary material in support of his claims.

> The trial court erred when it held that appellant's claims in his post-conviction relief was [sic] barred by the doctrine of res judicata.

As Mayes did not raise as an independent claim his assertion that trial counsel had been ineffective, Mayes' appeal of the trial court's denial of his petition for post-conviction relief did not toll the running of the statutory period.  *See Griffen v. Rogers*, 399 F.3d 626, 634 (6th Cir. 2005) (noting that a pending claim in state court will not toll the statutory period if it is not a federal constitutional claim).  Consequently, the statutory period began to run on April 20, 2005.

Nor did Mayes' appeal to the Ohio Supreme Court after the appellate court denied his appeal toll the running of the statutory period.  Mayes' memorandum in support of jurisdiction asserted a single proposition of law:  "The trial court and the court of appeals erred in denying appellant an evidentiary hearing regarding newly discovered evidence that supports appellant's claims in appellant's post-conviction relief petition."  This was not an independent federal constitutional claim; thus, it did not toll the running of the statutory period.

Mayes' motion in the state appellate court pursuant to Ohio App. R. 26(B) did not toll the running of the statutory period.  That motion merely asked for the appointment of counsel.  It did not raise an independent federal constitutional claim.

Mayes' claim that the state compelled him to be a witness against himself is incomprehensible, as he did not testify at trial.  Mayes does nothing to clarify the nature of his double jeopardy, due process, and equal protection claims asserted in ground one.  The only claim for which he offers any clarification or support is his claim of ineffective assistance of trial counsel.  Thus, because Mayes has failed to explain or support any claim in his first ground for relief other than his claim of ineffective assistance of counsel, all claims in his first ground for relief should be dismissed except his claim of ineffective assistance of counsel for failure to assume his burden of proof.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

---

On March 14, 2006, Mayes filed in the trial court a petition for modification of sentence.  The state appellate court later determined that this petition had been untimely and that Mayes had failed to meet the conditions required before a court may consider the merits of an untimely petition.  An untimely filing is not a "properly filed" document that tolls the running of the statute of limitations at 28 U.S.C. § 2244(d)(1).  *See Artuz v. Bennett*, 531 U.S. 4, 8, 9-10 (2000).  Mayes' petition for modification of sentence, therefore, did not toll the running of the statutory period.  Consequently, the statutory period within which Mayes' should have filed a federal petition for a writ of habeas corpus expired on April 20, 2006.

Respondent has not raised the defense of untimely filing, apparently because he incorrectly calculated the running of the statutory period.  Under these circumstances, the court may raise the issue *sua sponte*, after providing Mayes an opportunity to brief the issue.  *Day v. McDonough*, 547 U.S. 198 (2006).

> defense. This requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction . . .
> resulted from a breakdown in the adversary process that renders the result
> unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant

20

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96.  That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State

21

court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court. *Id.* There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

The state appellate court reviewing Mayes' claim of ineffective assistance of counsel on direct appeal, after first citing the appropriate legal standard, issued the following findings of fact and conclusions of law:

> [5] {¶ 64} The record with regard to trial counsel's actions in this case fails to demonstrate counsel's performance fell below an objective standard of reasonableness; in spite of appellant's argument, the decision to call a witness during the course of trial is a matter of trial strategy. *State v. Hunt* (1984), 20 Ohio App.3d 310, 486 N.E.2d 108.

> {¶ 65} Although appellant contends counsel should have presented defense witnesses who would have challenged the credibility of the state's witnesses, his contention is speculative at best. A review of the suggested "evidence" appellant seeks at this juncture to fault counsel for failing to provide indicates it would be inadmissible as either hearsay or collateral to the issue of guilt. It is likely, therefore, counsel decided its presentation would both alienate and unnecessarily tax the patience of the jury.

> {¶ 66} The record demonstrates trial counsel was well-prepared, knowledgeable, and careful in his cross-examination of the various witnesses presented by the state. In the face of overwhelming evidence of appellant's guilt, he chose to portray appellant as a man with tender proclivities who, perhaps because R's mother had lived an unconventional life for the past few years, had been unjustly accused in an attempt by R to obtain some attention. As the court admonished

22

in *State v. Hart* (1988), 57 Ohio App.3d 4, 566 N.E.2d 174, effective assistance of counsel does not guarantee favorable results.

{¶ 67} Since appellant has failed to demonstrate either that his counsel fell below an objective standard of reasonable representation or that he was prejudiced thereby, his pro se assignment of error . . . is overruled.

*Mayes*, 2004 WL 858099 at *7-*8.

Mayes makes no effort to demonstrate that the state appellate court's findings of fact were based on an unreasonable determination of the facts in light of the evidence presented, nor does he argue that the state court's decision regarding counsel's alleged ineffectiveness resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  Rather, Mayes' arguments in the portion of his Traverse devoted to this ground for relief consist of assertions that he has exhausted his remedies, that the state courts improperly used *res judicata* to bar certain claims, that cancer treatments impaired his ability to argue his assertions regarding modification of sentence in the Ohio Supreme Court, that the state courts were biased against him, that the evidence against him was fabricated, that Mayes was denied trial transcripts, and  that trial counsel refused to cooperate with Mayes on his direct appeal. Mayes' only statements related to his claim of ineffective assistance of counsel are as follows:

In determining whether a "reasonable juror would have found" the Petitioner "guilty beyond a reasonable doubt in the light of new," or otherwise, "evidence," it is well settled that when any/all defense witnesses offer substantial evidence to the defense attorney that the alleged victim totally fabricated allegations in which Petitioner was falsely charged and arrested, this same attorney is guilty of being "ineffective in the representation at trial" without using this key evidence.  In addition, Petitioner had filed a "Motion for Appointment of Counsel to Re-Open Appeal under App. R. 26."  The purpose behind this motion was to make it clear that an issue of ineffective assistance of appellate counsel was warranted. . . .

23

> This obviously blatant disregard and distinct false information given by the defense attorney, and subsequently ignored by the appellate counsel, towards these substantial defense witnesses only confirms ineffectiveness by counsel(s) to the Petitioner during his trial, and subsequently at his direct appeal, thereby making Petitioner's claim a constitutional one.

(Citations omitted, punctuation and capitalization altered.)  Mayes does not discuss the content of the alleged witnesses' testimony or examine its probative value, nor does he demonstrate that this testimony would have been admissible had his attorney agreed to call the witnesses to whom Mayes refers.

An examination of the potential testimony to which Mayes apparently refers[4] finds that they are largely unsigned affidavits, hearsay, or statements regarding the character of the persons involved.  The few statements that might have been admissible as evidence would have had little probative value, if any.  Thus, the evidence in the record supports the state appellate court's dismissal of Mayes' supposedly "substantial defense witnesses" rather than Mayes' characterization of that evidence.

Mayes fails to show that the state appellate court erred in its findings of fact or conclusions of law when it held that Mayes' attorney's performance was not constitutionally ineffective.  Thus, he state appellate court's determination that Mayes failed to establish the first prong of the test for ineffective assistance of counsel, whether his attorney's performance was objectively deficient, must stand.  This court concludes, therefore, that Mayes' claim that his trial counsel's performance was constitutionally ineffective is without merit.

For these reasons, Mayes' first ground for relief should be dismissed.

---

[4] Appended to Mayes' "Written Argument in Lieu of Personal Appearance for Oral Argument," Answer, Exh. 12, internal exhs. E, H, I, and J.

24

### III.  Conclusion

Mayes' first ground for relief should be dismissed as meritless.  Mayes' second, third, and fourth grounds for relief should be dismissed as procedurally defaulted.  For these reasons, Mayes' petition for a writ of habeas corpus should be dismissed.


Date:  October 28, 2009                          /s/ *Nancy A. Vecchiarelli*
                                                 United States Magistrate Judge


### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

25